The STATE OF NEW YORK, Plaintiff,

v.

SHORE REALTY CORP. and Donald Leogrande, Defendants.

SHORE REALTY CORP. and Donald Leogrande, Third-Party Plaintiffs,

v.

AAR TECHNICAL SERVICE CENTER, et al., Third-Party Defendants.

No. 84–CV–0864.

United States District Court, E.D. New York.

Oct. 10, 1986.

BRAMWELL, District Judge.

Plaintiff, the State of New York, commenced this action against Shore Realty Corp. and its president and sole shareholder, Donald LeoGrande, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* (CERCLA) and New York State statutory and common law, to compel defendants to clean up a hazardous waste disposal site located at One Shore Road, Glenwood Landing, New York, and to recoup alleged response costs incurred by the State in connection with the site. In turn, the defendants (collectively referred to as "Shore") instituted a third-party action for contribution, under CERCLA and State Law, against ninety-five other alleged responsible parties, including past owners and operators of the site, and those who allegedly generated, transported, received, stored, or disposed of the hazardous wastes discovered on the premises (collectively referred to as "generators"). The third-party complaint also purports to state a civil rights claim under 42 U.S.C. § 1983 against Robert F. Flacke and Henry G. Williams, the former and current Commissioners of the New York State Department of Environmental Conservation (DEC).

Presently before the Court are three motions directed at the third-party complaint under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. First, a group of sixty purported generators ("participating generators") has moved to dismiss Shore's CERCLA claim. This motion is joined by three past owners of the site, Phillips Petroleum, Joseph Saleh, and Amnon Bartur, and, in part, by the United States Coast Guard and the United States Veterans' Administration ("federal agencies"), also purported generators. Second, the federal agencies move to dismiss the state law claims raised against them in the third-party complaint. Third, Flacke and Williams move to dismiss the allegations pertaining to them under 42 U.S.C. § 1983. Also before the Court is a motion by third-party defendant Westinghouse Electric Corporation ("Westinghouse") for imposition of sanctions against Shore pursuant to Rule 11 of the Federal Rules of Civil Procedure. For the reasons set forth below, all motions are denied except for those of Flack and Williams.

## I. BACKGROUND FACTS

The property at issue in this action is a 3.2 acre peninsula on the eastern shore of Hempstead Harbor in Glenwood Landing, New York. Although the current owner of the site, Shore did not participate in the generation or transportation of the more than 700,000 gallons of hazardous waste discovered on the premises. In 1978, the property was owned by Phillips Petroleum, Co. ("Phillips") and leased to Mattiace Petroleum, a hazardous waste disposal concern. In October of that year, an undisclosed spill occurred on the site, causing a toxic solvent to leak into the harbor. The leak was discovered by the United States Coast Guard, but before any enforcement action was taken, Phillips sold the property to Goldwep Realty Corp. ("Goldwep"), which was owned by Joseph Saleh and Amnor Bartur. Goldwep, in turn, sold the site to Saleh and Bartur, individually, in June, 1980.

Thereafter, Saleh and Bartur entered into a lease agreement with Hazardous Waste Disposal, Inc. ("HWD"), a hazardous waste transporter and, later, with Applied Environmental Services ("AES"), a hazardous waste treatment company. Both HWD and AES were and are owned by George Lawrence, who, through the two companies, illegally operated a hazardous waste facility on the site. Numerous generators named as third-party defendants contracted with HWD to transport hazardous substances to the site between 1980 and 1984.

On July 14, 1983, Shore contracted to purchase the property for the purpose of constructing condominiums. Before taking title, Shore had an environmental study conducted by WTM Management Corp. ("WTM") which showed that approximately 700,000 gallons of hazardous wastes were stored in five large tanks and other smaller

tanks and containers on the site, and that warehouses contained over 400 drums of chemicals. The tanks and drums, the report indicated, were poorly maintained and showed evidence of corrosion and leaking. Also according to the report, there was evidence of past hazardous spills at the site and continuous leaking of hazardous substances into the bay. WTM estimated that the cost of an environmental cleanup would range from $650,000 to $1,000,000. Although Shore had retained the option of voiding the purchase contract if the results of the study were unsatisfactory, Shore took title on October 13, 1983. On January 5, 1984, Shore obtained the eviction of HWD and AES, but not before some additional 90,000 gallons of hazardous substances had been added to the tanks.

On February 29, 1984, the State of New York commenced this action charging Shore with violating the federal CERCLA statute, sections 27–0901 and 27–0903 of New York's Environmental Conservation Law, and section 841 of New York's Real Property Actions and Proceedings Law. The complaint also alleged a cause of action in common law public nuisance. Facing the State's prayer for both monetary and injunctive relief, Shore attempted to join the past owners and operators of the site, and the generators, as necessary parties. Judge Charles P. Sifton, to whom the case was originally assigned, denied that application, indicating that the proper procedure was to implead the other alleged responsible parties. Shore complied by filing its third-party complaint in July of 1984.

On June 15, 1984, just before the third-party action was commenced, Judge Sifton issued an order requiring defendants to remove approximately 410 drums of hazardous materials from the site under State supervision (the "June order"). Thereafter, on October 15, 1984, in an oral decision read from the bench, this Court granted the State's motion for partial summary judgment, found Shore liable under CERCLA for response costs incurred by the State in assessing and monitoring the site, and directed Shore by permanent injunction to remove the hazardous wastes stored on the property, subject to monitoring by the State. This bench decision was confirmed by order dated October 30, 1984 (the "October order"). On April 4, 1985, the Court of Appeals for the Second Circuit affirmed this Court's decision and order, holding, *inter alia*, that Shore was a covered person under 42 U.S.C. § 9607(a); that injunctive relief was properly granted under state public nuisance law; and that defendant LeoGrande was jointly and severally liable under both CERCLA and New York Law. *New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985). On September 9, 1985, the Court reduced to judgment the costs incurred by the state in the amount of $40,140.24.

In March, 1985, defendants were held in civil contempt for failing to proceed with the cleanup as ordered. During the summer of 1985, however, Shore, under State supervision, completed the removal of the drums that were the subject of the June order. *See Letter of Gordon J. Johnson, Assistant Attorney General*, September 25, 1985, docket #377. The record indicates that Shore has incurred at least $49,000 in costs as a result of its compliance with the June order. *See Supplemental Declaration of David H. Peirez*, October 9, 1985, docket #386. This information was communicated to all third-party defendants in a letter dated August 8, 1985.

## II. DISCUSSION

### A. *The CERCLA claim*

The participating generators move to dismiss the CERCLA claim raised in the third-party complaint. CERCLA was enacted in 1980 to ensure the prompt cleanup of dangerous or potentially dangerous waste sites. In addition to providing federal funds for response efforts (the Superfund), the statute also authorizes causes of action by a State or a private party to seek compensation from other responsible parties for costs incurred in effecting a cleanup.

42 U.S.C. § 9607(a)(4)(A) and (B).[1] Responsible parties include present and past owners and operators of hazardous waste sites, transporters of hazardous substances, and parties who arrange for the transport or disposal of hazardous substances. *Id.* § 9607(a)(1), (2) and (3).

In the present case, the State, proceeding under § 107(a)(4)(A) of CERCLA, sought and was granted recovery against Shore, the current owner of the site, for response costs "not inconsistent with the National Contingency Plan [NCP]." 42 U.S.C. § 9607(a)(4)(A). As a private party, however, Shore must base its third-party action for contribution from past owners and operators of the site and the generators of the waste on § 107(a)(4)(B) of CERCLA, which allows recovery of those response costs "consistent with the [NCP]." *Id.* § 9607(a)(4)(B). The right to contribution under CERCLA has been upheld by a number of district courts, *see, e.g., United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 222 (W.D.Mo.1985); *Colorado v. Asarco, Inc.,* 608 F.Supp. 1484, 1492 (D.Colo.1985), and is not questioned by the movants here.[2] Rather, the attack on the federal aspect of the third-party complaint is two-fold. First, the participating genera-

tors argue that the Court lacks subject matter jurisdiction over the CERCLA claim because Shore failed to comply with the sixty-day notice requirement set forth in § 112(a) of the statute, 42 U.S.C. § 9612(a). Secondly, they contend that Shore has failed to state a valid claim under § 107(a)(4)(B) of CERCLA because it has not alleged actual incurrence of response costs consistent with the NCP. The Court is of the opinion that neither of these alleged deficiencies requires dismissal of the third-party complaint.

### (i) *The sixty-day notice requirement*

■ The participating generators' first contention may be disposed of in short order. Section 112(a) of CERCLA provides that "[a]ll claims against the Fund pursuant to this title shall be presented in the first instance ... to any ... person known to the claimant who may be liable under section 9607 of this title ..." 42 U.S.C. § 9612(a). Only if such a claim is not satisfied within sixty days of its presentation may suit be brought. *Id.* As the first sentence of this section makes clear, the notice provision applies only to actions in which a claim is sought to be presented

---

**1.** 42 U.S.C. § 9607(a) provides as follows:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
 (1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
 (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and
 (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person from which there is a release or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
 (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

**2.** In denying Shore's motion under Rule 19 of the Federal Rules of Civil Procedure, Judge Sifton held as follows:

It is well settled law that one tortfeasor may not compel the joinder of other alleged joint tortfeasors under Rule 19 ... courts have unanimously concluded that Congress intended the imposition of joint and several liability in CERCLA actions is to be determined under common law principles on a case by case basis ... [D]efendants can ... protect themselves by impleading alleged tortfeasors under Rule 14.

against the Superfund; it does not apply when a CERCLA claim is made against other alleged responsible parties such as the third party defendants. *United States v. Conservation Chemical Co., supra,* 619 F.Supp. at 209–211; *New York v. General Electric Co.,* 592 F.Supp. 291, 300–302 (N.D.N.Y.1984). *But see Bulk Distribution Centers, Inc. v. Monsanto Co.,* 589 F.Supp. 1437, 1448 (S.D.Fla.1984) (presentation of a demand letter to other potential responsible parties is a condition precedent to a cost recovery suit under section 9607(a)(4)(B)); *United States v. Allied Chemical Corp.,* 587 F.Supp. 1205, 1207 (N.D.Cal.1984) (claim procedure required by section 9612(a) governs action by government pursuant to section 9607(a)(4)(A)).

■ In any event, the Court is convinced that compliance with the notice requirement is not a jurisdictional prerequisite. *New York v. General Electric Co., supra,* 592 F.Supp. at 300–301; *see also City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1144 (E.D.Pa.1982). As the *General Electric* court noted, the rule in the Second Circuit incorporates the principle that such notice requirements are not jurisdictional. 592 F.Supp. at 301. Moreover, unlike other environmental statutes, CERCLA requires notice only to facilitate settlement. *Id.* at 300. Since, in this case, considerably more than sixty days elapsed between service of the third-party complaint and the filing of the instant motion, the parties were afforded adequate time to avoid judicial intervention. Thus, if section 9612(a) were applicable to the third-party action, Shore would be deemed to have substantially complied with its provisions.

### (ii) *Actual incurrence of costs consistent with the NCP*

■ The second argument for dismissal of the CERCLA claim requires more detailed consideration. The federal agencies join the participating generators in this application to the extent that it challenges the claim for costs incurred by Shore above those owed to the State, but disagree as to

the alleged justification for dismissal. As stated above, to recover under CERCLA, a private party must establish that it has incurred costs "consistent with the NCP." 42 U.S.C. § 9607(a)(4)(B). The NCP, which is authorized by § 105 of CERCLA, 42 U.S. § 9605, and promulgated at 40 C.F.R. § 300 *et seq.,* is designed to establish, *inter alia,*

> methods and criteria for determining the appropriate extent of removal, remedy, and other measures authorized by this chapter [and] appropriate roles and responsibilities for the Federal, State, and local governments and for interstate and non-governmental entities in effectuating the plan.

42 U.S.C. § 9605(3) and (4). Although all the movants agree that to state a claim under § 107(a)(4)(B), Shore must allege actual incurrence of costs, they differ as to what specifically must be pled with regard to the consistency element. According to the participating generators, consistency requires that Shore obtain governmental approval of its cleanup plan before seeking recovery from other potentially liable persons. The federal agencies, on the other hand, deny that governmental approval is a precondition to a private suit, but argue that Shore must plead consistency with the response methods detailed in the regulations in order to state a valid CERCLA claim. Admittedly, the third-party complaint lacks all of the allegations cited by the movants, a circumstance which could be fatal in another context. However, due to the third-party posture of this case, and documentation in the record which in the Court's view adequately satisfies the pleading requirements for a private cost recovery action, the deficiencies here amount to technicalities that are most efficiently remedied by the Court.

■ The alleged flaw in the third-party complaint is comprised of two parts: failure to allege incurred costs and failure to allege costs consistent with the NCP. Several courts that have addressed the issue have found that, before a private party may seek damages under § 107(a)(4)(B), it

must show that it has actually incurred necessary costs of response. *See Levin Metals Corp. v. Parr-Richmond Terminal Co.,* 608 F.Supp. 1272, 1275 (N.D.Cal.1985); *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 289 (N.D.Cal.1984); *Wickland Oil Terminals v. Asarco, Inc.,* 590 F.Supp. 72, 77–78 (N.D.Cal.1984), *rev'd in part, appeal dismissed in part,* 792 F.2d 887 (9th Cir.1986); *Bulk Distribution Centers, supra,* 589 F.Supp. at 1451–52; *United States v. Northeastern Pharmaceutical & Chemical Co.,* 579 F.Supp. 823, 850–51 (W.D.Mo.1984); *City of Philadelphia v. Stepan Chemical Co., supra,* 544 F.Supp. at 1143. In the present case, Shore's claim for contribution encompasses recovery of both the costs already incurred by the State and for which Shore has been held liable, and the costs Shore itself has or may incur in connection with the cleanup of the site.[3] With respect to the first aspect of the claim, the necessity of alleging the incurrence of actual costs is satisfied by reference back to the original complaint. The State's claim against Shore alleged incurred costs that are, by implication, part of Shore's claim. Moreover, the incurrence of response costs by Shore above those owed to the State is apparent from the record. The "Supplemental Declaration" of Mr. Peirez asserts that, as of October 10, 1985, Shore had expended more than $49,000 in compliance with the June order issued by Judge Sifton.[4] Rule 15(a) of the Federal Rules of Civil Procedure allows for liberal amendment of the pleadings, usually upon motion of a party. Although Shore has not formally moved to amend, it has requested the Court to deem the pleadings amended to incorporate the allegations of incurred costs contained in the Supplemental Declaration. To save time and a needless waste of resources, the Court will do so.

■ The Court will also deem the third-party complaint amended to allege, in general terms, that Shore's incurred costs are consistent with the NCP. With respect to the claim for contribution for costs already incurred by the State, even that amendment is unnecessary because those costs have already been held to be consistent with the NCP and reduced to judgment. Moreover, with respect to its own costs, Shore need not allege detailed compliance with the response methods outlined in the regulations, as the federal agencies contend. Of course, a private party seeking recovery under CERCLA bears the burden of both pleading and proving consistency with the NCP. However, the Federal Rules of Civil Procedure, in general, do not require specificity in the pleadings. Fed.R. Civ.Proc. 8. In addition, the question of consistency is a factual determination that cannot be made without the development of a record. *See Pinole Point Properties v. Bethlehem Steel Corp., supra,* 596 F.Supp. at 290; *City of Philadelphia v. Stepan Chemical Co., supra,* 544 F.Supp. at 1144.

---

3. As the Second Circuit made clear in its affirmance of the October order, Shore is enjoined under State law, not CERCLA, to complete the cleanup of the Glenwood Landing site. *New York v. Shore Realty,* 759 F.2d 1032, 1049 (2d Cir.1985). The federal agencies therefore argue, in a half-hearted fashion, that Shore's claim for costs under CERCLA beyond those already owed to the State is moot. *Memorandum in Support of Motion to Dismiss,* p. 9. This argument is meritless. Even though Shore must complete the cleanup under State law, the Court sees no obstacle to Shore's recovery of costs under CERCLA, if the requirements set forth in § 107(a)(4)(B) of the statute are otherwise satisfied.

4. The Supplemental Declaration of David H. Peirez, counsel for Shore, provides, in relevant part, as follows:

In connection with the removal of the drums, the defendants have incurred and paid the following response costs:

$49,000 September 1985 drum removal
$36,000 June 1984 drum removal

and, over $200,000 in cleanup, containment, repair, and guard service since required by order of the Court from January 1984 to date. In addition, as the Court is aware, judgment has been entered against the defendants for the response costs of the State in the amount of $40,-000. These are not the total response costs incurred by the defendants all of which will be presented when the Court makes allocation of responsibility among the various parties.... Document # 386 at p. 2, ¶ 4.

That determination goes more to the recovery of response costs than to the existence of a claim under CERCLA.[5]

■■■ Nor, as the participating generators argue, is prior governmental approval necessary for Shore to state a claim under § 107(a)(4)(B). CERCLA itself does not require such approval as a prerequisite to the recovery of response costs by a private party under § 107. *See Artesian Water Co. v. New Castle County*, 605 F.Supp. 1348, 1357 (D.Del.1985); *Pinole Point Properties v. Bethlehem Steel, supra*, 596 F.Supp. at 289. In section 111(a)(2) of CERCLA, Congress provided that, to be recovered from the Superfund, response costs "must be approved under the [NCP] and certified by the responsible Federal official." 42 U.S.C. § 9611(a)(2). In contrast, section 107 contains no such language. *See id.* § 9607. The fair inference is that Congress did not intend to impose a requirement of government approval for recovery of privately incurred response costs under section 107. *Artesian Water Co. v. New Castle County, supra*, 605 F.Supp. at 1357. This interpretation of CERCLA is supported by the most recent modifications of the NCP. In explaining the section of the regulations entitled "Other Party Responses," the Preamble to the Plan notes:

Section 300.71 requires the lead agency to approve in advance the adequacy of a response by a responsible party or other person when an action is undertaken in compliance with an administrative order or consent decree under CERCLA section 106 or when reimbursement from the Fund is to be sought under section 112 of CERCLA. (In the latter case, advance approval is known as pre-authorization. See § 300.25(d). *Otherwise, government approval of response actions is not required....*)

\* \* \* \* \* \*

5. The most recent modifications of the NCP have endeavored to clarify what Shore must prove in order to recover under the Act. Section 300.71 of the NCP now provides:

**Other party responses.**

(a)(1) Any person may undertake a response action to reduce or eliminate the release or threat of release of hazardous substances, or pollutants or contaminants. Section 107 of CERCLA authorizes persons to recover certain response costs consistent with this Plan from responsible parties.

(2) For purposes of cost recovery under section 107 of CERCLA, except for actions taken pursuant to section 106 of CERCLA or pursuant to preauthorization under § 300.25 of this Plan, a response action will be consistent with the NCP (or for a State or Federal government response, not inconsistent with the NCP), if the person taking the response action:

(i) Where the action is a removal action, acts in circumstances warranting removal and implements removal action consistent with § 300.65.

(ii) Where the action is a remedial action:

(A) Provides for appropriate site investigation and analysis of remedial alternatives as required under § 300.68;

(B) Complies with the provisions of paragraphs (e) through (i) of § 300.68;

(C) Selects a cost-effective response; and

(D) Provides an opportunity for appropriate public comment concerning the selection of a remedial action consistent with paragraph (d) of § 300.67 unless compliance with the legally applicable or relevant and appropriate State and local requirements identified under paragraph (4) of this section provides a substantially equivalent opportunity for public involvement in the choice of remedy.

(3) For the purpose of consistency with § 300.65 and § 300.68 of this Plan, except for response actions taken pursuant to section 106 of CERCLA or response actions for which reimbursement from the Fund will be sought, any action to be taken by the "lead agency" in § 300.65 or § 300.68 may be taken by the person carrying out the response.

(4) Persons performing response actions that are neither Fund-financed nor pursuant to action under section 106 of CERCLA shall comply with all otherwise legally applicable or relevant and appropriate Federal, State, and local requirements, including permit requirements.

50 Fed.Reg. 47912, 47977 (Nov. 20, 1985), *to be codified* at 40 C.F.R. § 300.71.

Under § 107(a)(4)(B), Shore bears the burden of proving consistency with the Plan, whereas in an action initiated under § 107(a)(4)(A) by the State or Federal government, there is a presumption of consistency which must be disproven by the defendant. The Court does not believe, however, that this difference in the allocation of the burden of proof implies stricter pleading requirements under § 107(a)(4)(B). In either cause of action, the question of consistency may be resolved only at trial or after a factual record has been developed.

[P]rior approval is unwarranted for response actions for which no claim against the Fund will be made and which are not taken in response to an enforcement action under CERCLA section 106. The costs and delays of prior approval by EPA of private party responses could significantly reduce the number and scope of those responses.

50 Fed.Reg. 47912, 47934 (Nov. 20, 1985) (emphasis added).

CERCLA contemplates a tripartite approach to cleaning up hazardous waste: (1) federally funded cleanup of waste sites; (2) State-initiated response actions; and, because Federal and State funds are limited, (3) private actions funded by lawsuits against private parties. As the regulations indicate, the last prong of this approach is nearly abrogated when a governmental entity is required to give prior approval to every cleanup begun by a private party. The liberal purpose of the Act is best fulfilled by permitting private actions without governmental approval, and with the question of whether the costs are consistent with NCP to be resolved at trial. *Fishel v. Westinghouse Electric Corp.*, 617 F.Supp. 1531, 1535 (M.D.Pa.1985).[6] Because the Court is convinced that, to satisfy this element of the statute, Shore need only aver the words "consistent with the NCP," the Court will deem the third-party complaint so amended. Thus, the CERCLA claim need not be dismissed for any of the reasons advanced by the movants.

**6.** Of course, if it were necessary to allege prior governmental approval in order to state a claim under § 107(a)(4)(B), the Court has no doubt that Shore would be able to do so. Shore's removal of the 410 drums pursuant to the June order was carried out under State supervision. Moreover, the cleanup plan mandated by the October order must also be approved and supervised by the State. In short, the State has operated as the "lead agency" in every aspect of the cleanup thus far. Consequently, it is clear that Shore's claim would not be barred for lack of governmental approval.

**7.** 28 U.S.C. § 1346(b) provides in full:

Subject to the provisions of [28 U.S.C. §§ 2671 et seq.] of this title, the district

### B. *The State Law Claim*

In addition to mounting an attack on Shore's CERCLA claim, the federal agencies also urge dismissal of the third-party complaint to the extent it is based on New York State tort law. Shore's third-party complaint alleges that by arrangement, such as contract, the federal agencies, caused hazardous wastes to be delivered to the site when the site was owned by Saleh and Bartur and operated by Lawrence, H.W.D., and A.E.S., and that these wastes constitute a public nuisance. TP Compl. ¶¶ 9–10. Shore further alleges that the federal agencies knew, or should have known, of the "unlicensed and unlawful status" and "deteriorated and unsafe condition of the site," *id.* ¶ 12, and that the federal agencies failed to "exercise reasonable care with respect to the hazardous substances [and] failed to take reasonable precautions against the foreseeable acts and omissions of the operators and owners of the site," *id.* The federal agencies argue that the claim based on these allegations is barred by the doctrine of sovereign immunity. The Court does not agree.

Liability of the federal agencies is determined by reference to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (FTCA), which provides a waiver of sovereign immunity for certain torts of federal employees' committed within the scope of their employment.[7] 28 U.S.C. § 1346(b). Under the provisions of the FTCA, the Federal government may be held liable to the same extent as would a private individual in ac-

courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

cordance with State law. *Id.* However, there are numerous situations in which immunity will still attach, two of which are highlighted by the federal agencies in their argument for dismissal.

First, the statute by its terms applies only to the acts of governmental employees and explicitly exempts the government from liability for the torts of independent contractors. *See* 28 U.S.C. § 2671; *Logue v. United States,* 412 U.S. 521, 526–27, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). As defined in 28 U.S.C. § 2671, the term employee includes employees of any "federal agency," but "federal agency" does not include any contractor with the United States. *See, e.g., Wood v. Standard Products, Co., Inc.,* 671 F.2d 825, 829 (4th Cir.1982).[8] Whether one is a governmental employee or an independent contractor is a question of federal law, not state law. *Logue v. United States, supra,* 412 U.S. at 528, 93 S.Ct. at 2220. The federal agencies assert that, because they hired independent contractors to dispose of the hazardous wastes, they are immune from liability based upon the negligent acts or omissions of the independent contractors. Although this contention may be correct, it misses the point. Shore does not seek to hold the federal agencies vicariously liable for the torts of the independent contractors; rather, it imputes primary negligence to the federal agencies in the selection of the contractor, a viable theory under the Act. *See Logue v. United States, supra,* 412 U.S. at 532–33, 93 S.Ct. at 2222 (government not liable for negligence of employees of independent contractors, but remand to determine if federal employee was negligent); *cf. Aretz v. United States,* 604 F.2d 417, 428–30 (5th Cir. 1979) (employment of independent contractor does not insulate government from lia-

bility for its own employees' acts of negligence that occur in connection with the work of the independent contractor).

The federal agencies nonetheless argue as a second basis for dismissal that "there is no liability in New York based on negligence where a landowner seeks to hold a generator of waste responsible for a public nuisance allegedly caused by the acts or omissions of the independent contractor." According to the agencies, disposal of hazardous waste is inherently dangerous activity and, thus, under New York law, they, as generators of hazardous waste, would be held strictly liable, a result prohibited by another exception to the FTCA's waiver of sovereign immunity. As the agencies point out, the liability of the government under the Act is limited by § 1346(b) to "negligent or wrongful acts." 28 U.S.C. § 1346(b). The Supreme Court has interpreted this language to bar liability based on strict liability in tort. *Dalehite v. United States,* 346 U.S. 15, 45, 73 S.Ct. 956, 972, 97 L.Ed. 1427 (1953), *overruled on other grounds, Rayonier, Inc. v. United States,* 352 U.S. 315, 319, 77 S.Ct. 374, 376–77, 1 L.Ed.2d 354 (1957); *see also Laird v. Nelms,* 406 U.S. 797, 798, 92 S.Ct. 1899, 1900, 32 L.Ed.2d 499 (1972). "Regardless of state law characteristics, the [FTCA] precludes the imposition of liability if there has been no negligence or other form of 'misfeaseance or nonfeaseance' on the part of the government." *Dalehite v. United States, supra,* 346 U.S. at 45, 73 S.Ct. at 956.

New York law generally immunizes the employer of an independent contractor from liability to a third-party for the acts or omissions of an independent contractor ("independent contractor rule") *McDonald v. Shell Oil Co.,* 20 N.Y.2d 160,

---

**8.** 28 U.S.C. § 2671 provides in pertinent part:

As used in this chapter and sections 1346(b) and 2401(b) of this title, the term—

"Federal agency" includes the executive departments and independent establishment of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States but does not include any contractor with the United States.

"Employee of the government" includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

166, 281 N.Y.S.2d 1002, 1005, 228 N.E.2d 899, 901 (1967); *Janice v. State,* 201 Misc. 915, 919, 107 N.Y.S.2d 674, 678 (Ct.Claims 1951). One exception to this rule is that the contractee remains strictly liable where the work to be done by the contractor is inherently dangerous. *See, e.g., Wright v. Tudor City Twelfth Unit, Inc.,* 276 N.Y. 303, 307, 12 N.E.2d 307, 308 (1938). It may reasonably be concluded, as the agencies argue, that New York courts would find, as a matter of law, that disposal of hazardous waste is inherently dangerous activity. *See New York v. Shore Realty Corp., supra,* 759 F.2d at 1052 (concluding that New York court would deem Shore's maintenance of the site to be abnormally dangerous activity constituting a public nuisance). Since *Dalehite v. United States, supra,* 346 U.S. at 45, 73 S.Ct. at 956, specifically held that the FTCA did not authorize suit against the government based on strict liability for ultrahazardous activity, the federal agencies are correct in maintaining that they not be held liable under this exception to New York's independent contractor rule.

It does not follow, however, that liability of the federal agencies is foreclosed under any other theory. The Act excludes liability based solely on the ultrahazardous nature of the activity but permits liability based on the wrongful or careless acts of the government for which it would be made liable under State law. *Laird v. Nelms, supra,* 406 U.S. at 801, 82 S.Ct. at 1901. Under New York law, a second exception to the independent contractor rule is that the employer remains liable where he fails to use reasonable care to select a competent contractor, if it turns out that the contractor was in fact incompetent. *State v. Schenectady Chemicals, Inc., supra,* 103 A.D.2d 33, 36, 479 N.Y. S.2d 1010, 1014 (3d Dep't 1984); *Janice v. State, supra,* 201 Misc. at 917, 107 N.Y. S.2d at 680. This theory of liability is separate and distinct from the strict liabili-

ty exception to the independent contractor rule discussed above. Thus, although any claim against the federal agencies based strict liability for inherently dangerous activity is barred by sovereign immunity, Shore may, and has, stated a valid claim of nuisance based on the agencies' own negligent acts in selecting a careless or incompetent person with whom to contract.[9] The motion to dismiss the State law claim is therefore denied.

### C. *The § 1983 claim*

Robert Flack and Henry G. Williams also move to dismiss the claim raised against them in the third-party complaint based on 42 U.S.C. § 1983. Shore alleges that Flack and Williams "promote[d] a policy which sanctioned and approved the active non-enforcement of applicable Federal and State laws and permitted, condoned and aided the unlawful conduct ... which ... has resulted in the release, or threat of release of hazardous substances at the site, and the consequent damage to the environment." TP Comp ¶ 39. Shore further alleges that these actions, taken under color of State law, deprived Shore of civil and Constitutional rights to "have and enjoy property, equal protection under the law and their entitlement to the fair and diligent enforcement of applicable State and Federal statutes." *Id.* ¶ 40. In moving to dismiss these allegations, Flack and Williams raise numerous arguments. Because the Court concludes that Shore has not identified a constitutional right redressable under § 1983, it need not reach the other issues raised by the movants.

Section 1983 reads: "Every person who, under color of any statute ... [or] regulation of any State ... subjects or causes to be subjected, any citizen of the U.S. to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party

---

9. The federal agencies have not addressed a third limitation to the FTCA's waiver of sovereign immunity set forth in 28 U.S.C. § 2680. This section provides that the government's waiver of sovereign immunity does not extend to claims which arise from a government employee's performance of "a discretionary duty or

function." *Dalehite v. United States,* 346 U.S. 15, 33, 73 S.Ct. 956, 967, 97 L.Ed. 1427, (1953), *overruled on other grounds, Rayonier v. United States,* 352 U.S. 315, 319, 77 S.Ct. 374, 376–77, 1 L.Ed.2d 354 (1957). In any event, such a defense would necessarily involve factual issues that cannot be resolved on a motion to dismiss.

injured in an action at law ...." 42 U.S.C. § 1983. To survive a motion to dismiss for failure to state a claim, a § 1983 complaint must allege conduct that arguably deprives the claimant of rights secured by the Constitution and laws of the United States. *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980); *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). The conduct complained of may not be conduct that affects all members of the public without specific injury to the pleading party. *Manion v. Holtzman,* 379 F.2d 843, 845 (7th Cir.), *cert. denied,* 389 U.S. 976, 88 S.Ct. 479, 19 L.Ed.2d 470 (1967). Moreover, the claimant must allege that a particular right has been violated.

 It is apparent from the third-party complaint in the present case that no such right is or can be alleged by Shore. The allegedly unlawful conduct by Flack and Williams occurred before Shore took title to the property, when Shore's interest therein was no different from that of any other member of the general public. Moreover, at the time of purchase, Shore was fully aware of the condition of the site, its prior use, and the possibility of liability for cleanup costs. Thus, it is difficult to imagine how Shore could allege a violation of a property or liberty interest protected under § 1983. As Shore concedes in its memorandum in opposition to the motion, the federal right urged is that "the present and future population be protected from environmental depredation." Shore's Memorandum in Opposition p. 7. As far as this Court is aware, such is not a right recognized under § 1983. *See Izaak Walton League of America v. Marsh,* 655 F.2d 346, 361 (D.C.Cir.) (generalized environmental concerns do not constitute property or liberty interests protected by the Due Process Clause of the Constitution), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630

(1981). Nor does the third-party complaint raise a cognizable claim under the equal protection clause. Although Shore implies unfairness in the application of Federal and State environmental laws, it does not allege intentional or purposeful discrimination on the part of the Commissioners, a prerequisite to a valid equal protection claim. Consequently, the Commissioners' motion to dismiss the § 1983 claim is granted.

### D. *The Rule 11 Motion*

Finally, the Court turns to Westinghouse's motion for sanctions against Shore under Rule 11 of the Federal Rules of Civil Procedure.[10] Westinghouse claims that Shore's memorandum in opposition to the participating generators' motion to dismiss contains representations so lacking in factual support that reasonable inquiry on the part of Shore's special counsel would have determined that they should not have been made. The offending passage is:

> The third-party defendants who brought on the instant motion generated and deposited at the Site hazardous waste materials, *including, it would seem, in the case of Westinghouse Electric Corporation,* quantities of PCB's, a particularly dangerous toxic waste identified as a cause of cancer.

Shore's Memorandum in Opposition, pp. 4–5 (emphasis added).

 The Court does not agree that sanctions are warranted. Although Rule 11 sanctions should be imposed when allegations have been fabricated and a reasonable inquiry could have determined that the allegations are not true, sanctions are "not intend[ed] to stifle enthusiasm or chill the creativity which is the very lifeblood of the law." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). Nor are sanctions properly imposed when a complicated discovery process would be necessary to determine the

---

**10.** Fed.R.Civ.P. 11 provides, in pertinent part: The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing

law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

accuracy of the allegations. Here, the Court cannot determine on the record whether the allegation that Westinghouse may have shipped PCB's to the site is false, or that a reasonable inquiry by Shore's attorney would have shown the allegations to be false. Thus, the Court must deny Westinghouse's application, at least at this time.

## III. CONCLUSION

Based on the foregoing analysis, all motions presently before the Court are DENIED, except that the motion of third-party defendants Robert Flack and Henry G. Williams to dismiss the § 1983 claim raised against them is GRANTED. Additionally, the third-party complaint is deemed amended to allege the incurrence of costs specified in the Supplemental Declaration of David Peirez and to allege that these costs were incurred "consistent with the National Contingency Plan."

All parties to this action are directed to appear before the Court for a status conference on Wednesday, January 14, 1987, at 2:00 p.m.

IT IS

SO ORDERED.