**ROCKWELL INTERNATIONAL CORPORATION, a Delaware corporation, Plaintiff,**

v.

**IU INTERNATIONAL CORPORATION, a Maryland corporation, Byevalve Company, a Delaware corporation, Valve Systems International, Inc., a Delaware corporation, IU North America, Inc., a Delaware corporation, and Pennwalt Corporation, a Pennsylvania corporation, Defendants.**

No. 87 C 10609.

United States District Court, N.D. Illinois, E.D.

Oct. 27, 1988.

James A. Vroman, James H. Russell, Nancy M. Kollar, Winston & Strawn, Chicago, Ill., Jose N. Uranga, Asst. Gen. Counsel, Rockwell Intern. Corp. Richardson, Tex., for plaintiff.

David E. Bennett, Chadwell & Kayser, Chicago, Ill., Bradford F. Whitman, Kevin L. Call, Dechert Price & Rhods, Philadelphia, Pa., Robert L. Graham, Robert T. Markowski, Gabrielle Sigel, Jenner & Block, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Rockwell International Corporation ("Rockwell") brings this two-count action under § 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), to recover various costs incurred at Rockwell's manufacturing facility in Carpentersville, Illinois ("Facility") and for declaratory judgment as to liability for future costs. Defendants IU International Corp. ("IU"), Valve Systems Interna-

tional, Inc. ("VSI") and IU North America, Inc. ("IUNA") (collectively, "IU Defendants") move to dismiss and for summary judgment. For the following reasons, the motion to dismiss is denied, and the motion for summary judgment is granted in part and denied in part.

### Factual Background[1]

In March 1982, Rockwell purchased all of the assets of Hills–McCanna (later the Byevalve Co.), which included the Facility. Hills–McCanna was an indirect subsidiary of IU. In its complaint, Rockwell traces the history of ownership of the Facility prior to the 1982 purchase, but, for purposes of these motions, it is sufficient to note that at all times pertinent to this action either the Pennwalt Corp. or one of IU's direct and indirect subsidiaries owned the Facility. In 1986, Rockwell discovered traces and residues of various hazardous substances as defined by CERCLA, 42 U.S. C. § 9601(14). The Illinois Environmental Protection Agency directed Rockwell to initiate various testing and monitoring procedures pursuant to a Remedial Investigation Work Plan. No governmental or private entity has as of yet filed an action against Rockwell ordering a cleanup or seeking reimbursement for the costs of cleanup.

Rockwell filed this action to recover costs already incurred and to obtain a declaratory judgment as to defendants' liability for whatever costs Rockwell will incur in the future as a result of the actual or threatened release of hazardous substances at the Facility. Rockwell seeks this relief through claims of joint and several liability (Count I) under CERCLA, § 9607(a), and contribution (Count II) under CERCLA, § 9613(f) and Illinois statutory and common law.

### Motion to Dismiss

The IU Defendants contend in their motion to dismiss that Rockwell's action is premature since Rockwell has not commenced a government-approved program to clean the Facility and since Rockwell itself

is not a defendant in any suit brought under CERCLA § 9607(a). We address each contention in turn.

### A. Cleanup Program as Prerequisite to § 9607(a) Action

#### 1. *To Recover Costs Already Incurred*

█ Section 9607(a), the source of Rockwell's claim in Count I, provides that

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

\*      \*      \*      \*      \*      \*

shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary *costs of response incurred by any other person* consistent with the national contingency plan. (Emphasis added).

The pertinent terms are defined in § 9601:

The terms "respond" or *"response" means remove, removal,* remedy, and remedial action ... § 9601(25).

The terms *"remove" or "removal" means* the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, *such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances* ... § 9601(23). (Emphasis added).

The IU Defendants contend that Rockwell cannot maintain an action to recover only monitoring and investigatory costs that it has already incurred until it begins to implement a government-approved clean-

---

1. Unless noted otherwise, plaintiff's complaint sets forth the following allegations which, along with all reasonable inferences therefrom, we take as true for purposes of this motion to

dismiss. *Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987).

up program. Some district courts have agreed with this contention, holding that before a private claimant can maintain a remedial and costs recovery action, it must obtain government approval of a plan and begin or complete implementation of that plan. *Marmon Group, Inc. v. Rexnord, Inc.*, No. 85–C–7838 slip op. (N.D.Ill. June 16, 1986) [1986 WL 7070] (Kocoras, J.), *rev'd on other grounds*, 822 F.2d 31 (7th Cir.1987); *Artesian Water Co. v. Government of New Castle County*, 605 F.Supp. 1348 (D.Del.1985); *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 608 F.Supp. 1272 (N.D.Cal.1985); *Bulk Distribution Centers, Inc. v. Monsanto Co.*, 589 F.Supp. 1437 (S.D.Fla.1984). The rationale underlying these decisions was that "few hazardous releases would be cleaned up by private parties if they first had to agree upon a clean-up proposal." *Bulk Distribution*, 589 F.Supp. at 1447–48.

We decline to adopt these holdings or their reasoning and instead follow the numerous decisions expressly rejecting this limitation to § 9607(a) actions and holding that a party may recover monitoring, assessment and evaluation costs even if the government has not approved a cleanup plan and cleanup has not yet begun. *E.g., Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 840 F.2d 691, 694–95 (9th Cir.1988); *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887 (9th Cir.1986); *Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 691 F.Supp. 1100 (N.D.Ill.1988) (Roszkowski, J.); *New York v. Shore Realty Corp.*, 648 F.Supp. 255 (E.D.N.Y.1986); *New York v. Exxon Corp.*, 633 F.Supp. 609 (S.D.N.Y.1986).[2] Section 9607 allows for actions seeking recovery of removal costs which are defined to include monitoring and investigatory costs. *Wickland Oil*, 792 F.2d at 891–92. There is no requirement as in actions against the Superfund under § 111(a)(2) that these costs accompany cleanup costs or that the government first approve such costs. "The fair inference is that Congress did not intend to impose a requirement of governmental approval for recovery of privately incurred response costs under Section 107." *Shore Realty Corp.*, 648 F.Supp. at 263.

Further, the purposes of CERCLA are best-served by allowing private parties to implement a cleanup program and establish their respective responsibilities for the costs of that program without first obtaining government approval. Those decisions disallowing such claims are based on the questionable presumption that responsible private parties would only delay cleanup if they had to agree upon a program amongst themselves. Such a presumption ignores the fact that CERCLA contemplates not only government-funded and initiated response actions but also "private actions funded by lawsuits against private parties.... The liberal purpose of [CERCLA] is best fulfilled by permitting private actions without governmental approval, and with the question of whether the costs are consistent with [the national contingency plan] to be resolved at trial." *Id.* at 264. The framers of CERCLA evidenced no intention either to legislate an assumption that actual government intervention is essential to speedy and efficient hazardous waste cleanup or to foreclose the opportunity, as presented here, that the parties will agree upon an effective cleanup plan and implement it with the understanding that government intervention may follow their failure to do so. As the United States EPA explained in its preamble to the national contingency plan:

> EPA ... believes that prior approval is unwarranted for response actions for which no claim against the Fund will be made and which are not taken in response to an enforcement action under CERCLA section 106. The costs and delays of prior approval by EPA of private party responses could significantly reduce the number and scope of those responses. Delaying private party responses pending negotiations between PRPs [potentially responsible parties]

**2.** *See also Artesian Water Co. v. Government of Newcastle County*, 659 F.Supp. 1269, 1294 (D.Del.1987), *aff'd*, 851 F.2d 643 (3d Cir.1988) (reconsidering its earlier decision and holding that the accrual of monitoring and evaluation costs are sufficient to state a CERCLA claim even in the absence of any government approved cleanup plan).

and the government would not only reduce incentives for other party responses, but could also harm the enforcement process by reducing incentives for PRPs to settle with the government expeditiously. 50 Fed.Reg. 47911, 47934 (Nov. 20, 1985).

Thus, allowing § 9607(a) actions prior to government involvement and cleanup serves the purpose and goals of CERCLA, and we accordingly hold that Rockwell's failure to allege the existence of or activities pursuant to a government-approved response plan is not fatal to its claim in Count I.

### 2. To Recover Costs Not Yet Incurred

■ In addition to its request for recovery of the monitoring and investigation costs already incurred, Rockwell seeks a declaratory judgment that defendants are jointly and severally liable for all cleanup costs that it may incur in the future. Declaratory relief is authorized under 28 U.S.C. § 2201(a):

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

The purpose of a declaratory judgment is to allow the parties to understand their rights and liabilities so that they can adjust their future action to avoid unnecessary damages. *ACandS, Inc. v. Aetna Casualty and Surety Co.,* 666 F.2d 819, 823 (3d Cir.1981). It is therefore clear that the adjudication of all of the issues arising out of a request for declaratory relief will not and need not result in any actual calculation or immediate payment of damages. *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

■ Rockwell has satisfactorily pled a claim for declaratory relief in Count I. This action is within our jurisdiction by virtue of § 9607(a). Further, there is an actual controversy. The Facility contains hazardous wastes, and Rockwell has already incurred some initial costs in response to the Illinois EPA's order. The parties potentially responsible for future cleanup operations are identifiable. In sum,

> The essential fact establishing [plaintiff's] right to declaratory relief—the alleged disposal of hazardous substances at [a facility] at the time [defendants] owned and operated the ... facility—has already occurred. The absence of government enforcement actions against [plaintiff] under CERCLA does not render the controversy between [the parties] remote and hypothetical.

*Wickland Oil,* 792 F.2d at 893. *Compare D'Imperio v. United States,* 575 F.Supp. 248 (D.N.J.1983) (finding that in the absence of any orders from the EPA, any indications of potential liability, and nonidentifiable responsible parties, action for declaratory relief as to future liability was not ripe). Accordingly, Rockwell may seek declaratory relief as to liability for future cleanup costs, whether those costs are incurred as a result of its own cleanup plan or under a plan approved or ordered by the Illinois or United States EPA.[3]

### B. Liability Under § 9607(a) as Prerequisite to a § 9613(f) Action

■ The IU Defendants challenge Count II, the claim for contribution, on the grounds that such a claim cannot be maintained until Rockwell is actually sued under § 9607(a). Section 9613(f), the source of Rockwell's claim for contribution, states that:

---

**3.** The decision in *United States v. Mottolo,* 107 F.R.D. 267 (D.N.H.1985) does not contradict our conclusion. There, the court expressly allowed an amendment to include a request for declaratory judgment as to liability for future costs, but refused to allow the case to proceed to trial "until such time as plaintiffs have presented a comprehensive and quantified ad damnum and

until such time as the parties have thoroughly explored the possibility of settlement." *Id.* at 268. The court expressly noted that its holding was based on the particular circumstances of that case. *Id.,* n. 2. We make no decision at this point as to whether a similar procedural posture is warranted here.

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.... Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title. 42 U.S.C. § 9613(f)(1).

The parties dispute the application of this provision to Rockwell's contribution claim. The IU Defendants contend that the first sentence precludes any claim sounding in contribution except when brought by a party defending against or found liable in a § 9606 or § 9607(a) action. Rockwell views the last sentence as allowing such claims at any point in time irrespective of the litigation status of the party seeking contribution. We reject both interpretations as attempts to read more into § 9613(f) than is actually there.

■ The purpose of § 9613(f) is simple—to provide parties found liable under CERCLA with an avenue for obtaining compensation from other responsible parties. Contribution is unavailable to a party liable under federal law unless a federal statute expressly establishes such a remedy. *Rebelle v. United States*, 588 F.Supp. 49 (M.D.La.1984). Accordingly, in 1986 Congress added § 9613(f) to CERCLA in order to provide for contribution. Except for the other provisions of § 9613 which are not relevant here, there is no evidence that Congress intended that such actions for contribution be different from contribution actions in any other federal context.

The IU Defendants are correct that contribution is a remedy available to parties held liable, through judgment or settlement, in some damages action. To receive any actual compensation through an action for contribution, the party must have been found liable as a defendant in an earlier or pending action. However, nothing in either the concept of contribution or CERCLA precludes a plaintiff from seeking a declaratory judgment, under 28 U.S.C. § 2201, that defendants who are jointly and severally liable should pay contribution for certain portions of that liability, only in the event the plaintiff is later found liable.[4] While the language "during or following any civil action" suggests such a limitation, we view it only as a recognition that the actual payment of damages cannot occur until such time.[5] Similarly, we view the last sentence of § 9613(f) not as derogating from the requirement that a finding of liability precede any award in contribution but as an assurance that contribution remains available in other contexts, such as through Rockwell's claims for contribution under Illinois law.

The purposes of CERCLA are served by allowing a declaratory judgment under § 9613(f). Congress sought through CERCLA not only to expedite the cleanup of hazardous waste sites but also to assure the equitable allocation of associated costs among all responsible parties. *Allied Corporation*, 691 F.Supp. at 1103. If Rockwell prevails in its claim for declaratory relief in Count I, it will establish that one or more defendants are jointly and severally liable for any response costs that Rockwell incurs at the Facility in the future.

---

**4.** The IU Defendants rely primarily on *United States v. Seymour Recycling Corp.*, 686 F.Supp. 696 (S.D.Ind.1988), in which the court stated categorically that "a person can gain contribution only after it 'has resolved its liability with the United States or a State.'" *Id.* at 700. The provision that the court quoted to reach its decision applies only to situations in which there are already responsible parties who have reached an "administrative or judicially approved settlement." § 9613(f)(3)(B). To the extent that the court intended to hold that a declaratory judgment to determine the proportion of responsibility is never available unless the party seeking contribution has resolved its liability with the government, we respectfully disagree with the decision.

**5.** We view the portions of the legislative history to which the IU Defendants direct our attention merely as reaffirmations of the notion that the award of an actual dollar amount arising out of a request for contribution can only follow a later action in which Rockwell is found liable. Nothing in that history suggests that the framers of § 9613 intended to disallow a request for a declaratory judgment under 28 U.S.C. § 2201 as to how such future liability should be apportioned among the responsible parties.

The request for declaratory judgment in Count II provides an avenue for determining how such liability should be apportioned among those responsible parties. It may very well be that Rockwell will never actually obtain damages under Count II, but such is often the case with declaratory relief, and, in any event, the parties, understanding who is liable and in what proportions, may have an incentive to agree upon an effective and cost-efficient plan to remove the wastes from the Facility before the government intervenes through the courts.

We recognize that it may be prohibitively speculative to equitably apportion liability in the absence of an actual finding of Rockwell's liability. That possibility does not preclude declaratory relief but merely places a very difficult burden upon Rockwell. Nothing in the complaint suggests that Rockwell cannot meet that burden, and we accordingly deny the motion to dismiss Count II.

### Summary Judgment

■ In their motion for summary judgment, the IU Defendants contend that the undisputed facts demonstrate as a matter of law that they never owned nor operated the Facility and therefore cannot be subject to CERCLA liability. Specifically, only direct or indirect subsidiaries of the IU Defendants owned and operated the Facility, and Rockwell can present no evidence justifying piercing the corporate veil to hold the IU Defendants liable. We conclude that Rockwell has identified sufficient evidence in the record from which a trier of fact could reasonably find that at certain intervals between 1972 and 1982, IU (but not IUNA or VSI) was an operator within the meaning of CERCLA and therefore a responsible party. We accordingly deny summary judgment as to IU without addressing whether Rockwell can pierce the corporate veil to hold IU liable as an owner of the Facility.

■ Rockwell charges that the IU Defendants are responsible parties under the CERCLA provision that attaches liability to

    any person who at the time of disposal of any hazardous substance owned or oper-

ated any facility at which such hazardous substances were disposed of ... § 9607(a)(2).

"The term 'owner or operator' means ... in the case of an onshore facility or an offshore facility, any person owning or operating such facility.... Such term does not include a person who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility." 42 U.S.C. § 9601(20)(A). Thus, "only those who actually operate or exercise control over the facility that creates an environmental risk can be held liable under CERCLA for the costs of reducing that risk." *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651, 657 (N.D.Ill.1988). *See also United States v. Northeastern Pharmaceutical & Chemical Co. ("NEPACCO")*, 579 F.Supp. 823, 848 (W.D.Mo.1984) ("The statute literally reads that a person who owns interest in a facility and is actively participating in its management can be held liable for the disposal of hazardous waste."), *aff'd in part* and *rev'd in part*, 810 F.2d 726 (8th Cir. 1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). Mere ability to exercise control as a result of the financial relationship of the parties is insufficient for liability to attach. The entity must actually exercise control. *United States v. Mirabile*, 10 Chem. & Rad. Waste Lit. Rep. 668, 670–71 (E.D.Pa.1985). *Compare NEPACCO*, 579 F.Supp. at 849 (suggesting mere capacity to control is sufficient for liability to attach).

We view the following evidence as demonstrating sufficient participation in the management of and indicia of the actual exercise of control over the operations of the Facility to warrant a finding that IU was an operator of the Facility within the meaning of § 9607(a)(2) and therefore subject to liability as a responsible party. IU hired or approved the hiring of certain corporate officers (including the chief executive officer), some of whom were also IU officers, in the subsidiaries that directly owned the Facility and operated it on a

day-to-day basis.[6] Certain IU appointees remained in charge of the Facility through the various changes in ownership among IU subsidiaries. IU determined the responsibilities of those officers it appointed. IU executives established the procedure for and approved the operational plans of the Facility and monitored conformance therewith. IU auditors suggested changes in certain procedures that directly affected the disposal of hazardous substances. Various IU auditors and accountants reviewed requests by the subsidiary that directly owned the Facility to purchase environmental protection equipment.[7] Finally, IU itself stated in public announcements that it operated the Facility.

With this evidence, Rockwell has created a genuine material issue of fact as to whether IU was an operator of the Facility. However, Rockwell has failed to present any evidence establishing IUNA and VSI's status as owners or operators of the Facility, and we accordingly grant summary judgment as to them.

### Conclusion

Rockwell may recover in a § 9607(a) action the costs that it has incurred in investigating and monitoring the release of hazardous wastes at the Carpentersville facility. Rockwell may also seek a declaratory judgment that defendants are jointly and severally liable for future cleanup costs and a determination of how such liability should be apportioned. Rockwell has presented sufficient evidence to establish that IU International Corp. was an operator of the Facility. Accordingly, the motion to dismiss is denied, and the motion for summary judgment is denied as to IU, but

granted as to VSI and IUNA. It is so ordered.

---

**6.** This evidence alone distinguishes this case from *Edward Hines Lumber* in which we found that the plaintiff's evidence that the defendant built the facility and had at most a right of access to the facility was insufficient to establish operator liability. 685 F.Supp. at 656–57.

**7.** The IU Defendants point to evidence in the record that tends to negate the sufficiency of Rockwell's evidence to establish IU's control over the hazardous waste disposal activities of the Facility. Even if Rockwell's position is ren-

dered somewhat tenuous, that does not provide grounds for granting summary judgment but merely demonstrates that there is an issue of material fact as to whether IU was an operator of the Facility. We only hold that a trier of fact could find from all of the evidence that Rockwell has presented in opposition to summary judgment that IU controlled the Facility's operations. We deny summary judgment not because Rockwell will prevail before the trier of fact but because it could.