**UNITED STATES of America, et al.**

v.

**SEYMOUR RECYCLING CORPORATION, et al.**

No. IP 80–457–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 8, 1988.

Kurt Weissmuller, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Jeffrey J. Lorenzo, Seymour, Ind., for Seymour, Ind.

William C. Barnard, Sommer & Barnard, Indianapolis, Ind., for generator defendants.

Martha S. Hollingsworth, Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for Bd. of Aviation Comrs.

STECKLER, District Judge.

This matter is before the Court on three pending motions. The Board of Aviation Commissioners, Seymour, Indiana, has filed a motion to dismiss all cross-claims; the City of Seymour, Indiana, has filed a motion to dismiss cross-claims; and forty-nine named generator defendants have filed a motion for partial summary judgment. The Court has carefully considered the motions, the supporting memorandums of law, and the supporting exhibits. The Court now finds that all three motions must be denied.

Background

The United States filed this action in 1980 under Section 7003 of the Resource Conservation and Recovery Act, 42 U.S.C. § 6973, and Section 311 of the Clean Water Act. 33 U.S.C. § 1321, seeking relief to abate the hazard posed by hazardous wastes at the Seymour site. The United States named as defendants the Seymour Recycling Corporation, the City of Seymour, Indiana (the "City"), and the Board of Aviation Commissioners, Seymour, Indiana (the "Board"), among others.

The United States named the City and the Board as defendants because of their ownership interest in the Seymour site. The City had created the Board to operate Freeman Army Air Field ("Freeman Field") following World War II. The United States conveyed Freeman Field to the Board in 1948 pursuant to the Surplus Property Act of 1944. Since that time, the Board has operated Freeman Field as a municipal airport while leasing adjoining tracts to farmers and various industries. During the period beginning in 1970 through early 1980, the Board leased an adjoining portion of Freeman Field, the Seymour site, to the Seymour Recycling Corporation and its corporate predecessor, the Seymour Manufacturing Company. During the term of that lease, the lessee used the Seymour site as a hazardous waste treatment, storage and disposal facility.

In December 1980, Congress enacted the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675, to address the threat to public health and the environment from releases of hazardous substances at sites throughout the country. Under CERCLA, there were over 350 potentially responsible parties ("PRPs") for the hazardous condition at the Seymour site.

In October 1982, the United States filed an amended complaint asserting claims under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607. The United States sought injunctive relief under Section 106 of CERCLA to abate and remedy the release and threatened release of hazardous substances at the Seymour site. Additionally, the United States sought to recover the costs it had incurred in taking response actions at the site pursuant to Section 107 of CERCLA. In the amended complaint, the United States asserted its

CERCLA claims against the original defendants, including the City and the Board. The United States also added as defendants twenty-four of the largest generators of hazardous substances sent to the Seymour site. The United States and these twenty-four generators simultaneously entered a consent decree which provided for a partial surface cleanup of the Seymour site (the "Consent Decree"). The Court approved the Consent Decree on December 15, 1982. *See United States v. Seymour Recycling Corp.*, 554 F.Supp. 1334 (S.D.Ind.1982).

Under the Consent Decree, the twenty-four generators settled their potential liability with the United States. At the request of the settling generators, the City and the Board also executed the Consent Decree. The Consent Decree included a covenant by the governmental parties, including the City and the Board, not to sue the settling generators. The Consent Decree also included a covenant by the settling generators not to sue the United States or the State of Indiana. However, the Consent Decree *did not contain* a covenant by any party not to sue or otherwise proceed against the City or the Board.

In November 1982, the United States also offered each of the remaining persons who had contributed wastes to the Seymour site the opportunity to settle their liability. These PRPs could obtain a covenent not to sue from the United States in exchange for the payment of a "pro rata" sum based on each PRP's share (by volume of waste sent to the site) of the estimated total cleanup costs for the site. Over 200 PRPs accepted this offer, and the United States issued covenants not to sue ("Pro Rata Covenants Not to Sue") to these PRPs in 1983. Along with the United States and the State of Indiana, the City and the Board signed the Pro Rata Covenants Not to Sue. These covenants provided the settling PRPs the same protection from liability that the Consent Decree afforded the settling generators. Accordingly, the Pro Rata Covenants Not to Sue provided protection for the settling PRPs from suit by the governmental parties, including the City and the Board, but did not contain a reciprocal covenent by any party

not to sue or otherwise proceed against the City or the Board.

In exchange for their signatures on the Pro Rata Covenants Not to Sue, the City and the Board received a covenant not to execute ("the Covenant Not to Execute") from the United States and the State of Indiana. The Covenant Not to Execute provided that the United States and the State of Indiana would not execute upon any judgments they might obtain against the City and the Board in the action.

On January 4, 1984, the United States filed its second amended complaint. In the second amended complaint, the United States asserted its CERCLA claims against the original defendants, including the City and the Board, and added as defendants forty-nine generators (the "Generator Defendants"). A number of the Generator Defendants filed cross-claims against the City and the Board for contribution. On July 13, 1984, the Board filed a motion to dismiss all cross-claims. On July 16, 1984, the City filed a motion to dismiss cross-claims.

On November 24, 1987, the Generator Defendants filed a motion for partial summary judgment against the City and the Board. Through the motion, the Generator Defendants asked the Court to establish the liability of the City and Board as a matter of law for a portion of the Generator Defendants' past and future response costs under Section 107(a) of CERCLA.

Analysis

I. The Motions to Dismiss.

In the motions to dismiss, the City and the Board contend that the cross-claims for contribution fail to state a claim for which relief can be granted. Fed.R.Civ.P. 12(b)(6). First, the City and the Board argue that their settlement with the United States, as embodied in the Consent Decree and the Covenant Not to Execute, operates as a complete bar to the defendants' cross-claims for contribution. Second, the City and the Board argue that the Court must dismiss the defendants' cross-claims for contribution since the defendants failed to comply with the Indiana Tort Claims Act.

The Court disagrees with both of these contentions; therefore, the motions to dismiss of the City and the Board must be denied.

▮ The Consent Decree and the Covenant Not to Execute do not bar the defendants' contribution claims since neither the Decree nor the Covenant specifically contain a covenant by any party not to sue or otherwise proceed against the City or the Board.

The Court finds that the parties to the Consent Decree did not intend to foreclose contribution claims against the City and the Board. The Consent Decree and the Pro Rata Covenants Not to Sue all included a covenant by the settlors not to sue the United States or the State of Indiana; however, they did not contain a similar provision to protect the City and the Board from suit. The fact that the Consent Decree and the Pro Rata Covenants Not to Sue protected some governmental entities from suit but failed to protect the City and the Board, demonstrates that the parties to these agreements intentionally withheld liability protection for the City and the Board.

Likewise, the Court finds that the parties to the Covenant Not to Execute did not intend to foreclose contribution claims against the City and the Board. This Covenant not only lacked any contribution protection for the City and the Board, but expressly recognized that generators may file claims against the City and the Board. Paragraph 2 of the Covenant Not to Execute provides:

*In the event the City or the Board are sued by any generator or generators,* the United States and the State reserve the right to argue and to brief the merits of such generators' claims inclusive of the position that the City and the Board are owners and operators of an on-shore facility within the meaning of the federal pollution laws.

(Emphasis added.) Thus, the settlement between the City, the Board, and the United States, as embodied in the Consent Decree and the Covenant Not to Execute, did not contractually bar the defendants' contribution claims.

Additionally, the settlement did not statutorily bar the defendants' contribution claims. The contribution protection provision in Section 113(f)(2) of CERCLA provides as follows:

(2) SETTLEMENT—*A person who has resolved its liability* to the United States or a State in an administrative or judicially approved settlement *shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide,* but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9613(f)(2) (emphasis added). This section does not bar the defendants' contribution claims since: (1) the settlement did not resolve the liability of the City and the Board to the United States, and (2) the settlement did not address matters underlying potential claims for contribution.

Neither the Consent Decree nor the Covenant Not to Execute resolved the liability of the City and the Board to the United States. The Consent Decree included a covenant not to sue from all the governmental parties to the settling generators. The Decree also included a covenant not to sue from the settling generators to the United States and the State of Indiana. However, there was no covenant *between governmental parties* in the Consent Decree. The Covenant Not to Execute, on the other hand, was an agreement between City, the Board, and the United States. Nevertheless, the Court does not view the Covenant Not to Execute as resolving the liability of the City and the Board to the United States. Rather, the Court views this Covenant as merely a procedural agreement whereby the United States and the State of Indiana agreed to forego direct execution of judgment against the City and the Board, leaving the resolution of their liability to the procedural context of the defendants' claims for contribution. The Covenant Not to Execute recognizes that generators might bring claims against the

Board and the City and reserves the right of the United States to argue in support of those claims.

Likewise, neither the Consent Decree nor the Covenant Not to Execute addressed matters underlying potential claims for contribution. The contribution claims are based upon the liability of the City and the Board as responsible parties under CERCLA. Neither the Consent Decree Nor the Covenant Not to Execute stated whether the City or the Board was responsible for the cleanup of the site or for reimbursement of the government's response costs. Thus, the settlement between the City, the Board, and the United States, as embodied in the Consent Decree and the Covenant Not to Execute, did not contractually or statutorily bar defendants' contribution claims.

█ Finally, the defendants' alleged failure to comply with the Indiana Tort Claims Act does not bar the defendants' contribution claims. The Indiana Tort Claims Act does not apply to defendants' contribution claims since the claims were brought under a federal statute, CERCLA. CERCLA preempts state tort claims statutes. *See Artesian Water Co. v. Government of New Castle County*, 605 F.Supp. 1348, 1354–55 (D.Del.1985). Therefore, noncompliance with the Indiana Tort Claims Act cannot bar the defendants' claim for contribution under CERCLA. *Cf. Willis v. Reddin*, 418 F.2d 702, 704–05 (9th Cir.1969).

## II. The Motion for Summary Judgment.

█ In the motion for summary judgment the Generator Defendants seek a declaratory judgment that the City and the Board are liable to them for contribution. The Court now finds that the Generator Defendants' motion for summary judgment is not ripe for adjudication and must be denied.

Since the Generator Defendants have not yet resolved their liability to the United States, their request for declaratory relief on the contribution claims against the City and the Board is premature. Under Section 113(f) of CERCLA, which governs claims for contribution, a person may *"seek contribution from any other person who is liable or potentially liable … during or following any civil action under"* Section 106 or Section 107(a) of CERCLA. 42 U.S.C. § 9613(f)(1) (emphasis added). However, a person can *gain* contribution only after it "has resolved its liability with the United States or a State." *Id.* § 9613(f)(3)(B). *See also United States v. Tyson*, No. 84–2663, slip op. at 9–10 (E.D.Pa. Jan. 29, 1988) [available on WESTLAW, 1988 WL 7163]. Thus, until a party has settled with the United States or a state, its motion for declaratory relief on a contribution claim is premature. Here, the Generator Defendants have not settled with the United States; therefore, their motion for summary judgment against the City and the Board is not ripe.

The Court is also reluctant to prognosticate the liability of the City and the Board to the Generator Defendants for many practical reasons apart from the statutory mandate of CERCLA. For one thing, the liability of all of the defendants has not been adjudicated, and the Court has not decided whether all defendants liable to the United States should be jointly and severally liable. Additionally, since the Generator Defendants have not made any payment toward settlement, the Court cannot determine whether these defendants have paid more than their fair share and are entitled to contribution. Thus, a ruling by the Court in favor of the Generator Defendants on their motion for summary judgment would be an advisory opinion without a sound basis in fact or law.

## Conclusion

Accordingly, by reason of all of the foregoing, the Court hereby

DENIES the motion of the Board of Aviation Commissioners of Seymour, Indiana, to dismiss all cross-claims;

DENIES the motion of the City of Seymour, Indiana, to dismiss cross-claims; and

DENIES the motion of the Generator Defendants for partial summary judgment against the City of Seymour and the Board of Aviation Commissioners of Seymour, Indiana.

IT IS SO ORDERED.