**ALLOY BRIQUETTING CORPORATION, Plaintiff,**

v.

**NIAGARA VEST, INC. and Union Carbide Corporation, Defendants.**

**No. CIV–90–805S.**

United States District Court, W.D. New York.

Feb. 14, 1991.

Richard G. Collins, Buffalo, N.Y., John J. DelMonte, Niagara Falls, N.Y., for plaintiff.

Thomas E. Reidy, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for Union Carbide Corp.

Mark R. McNamara, Moot & Sprague, Buffalo, N.Y., for Niagara Vest, Inc.

## DECISION AND ORDER

SKRETNY, District Judge.

Defendant Union Carbide Corporation ("Union Carbide") brings this motion pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), for an order dismissing plaintiff's First through Seventh Claims for Relief. In support of its motion, Union Carbide submits the affidavit of Thomas E. Reidy, Esq. and the Exhibits annexed thereto ("Reidy affidavit"), a memorandum of law dated October 15, 1990 and a supplemental memorandum of law dated December 10, 1990.

Defendant Niagara Vest, Inc. ("Niagara Vest") joins in Union Carbide's motion and also brings a separate motion pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), for an order dismissing plaintiff's complaint in its entirety. In support of its motion, Niagara Vest submits the affidavit of Mark R. McNamara, Esq. and the Exhibits annexed thereto ("McNamara affidavit") and the reply affidavit of Mark R. McNamara, Esq. and the Exhibits annexed thereto ("McNamara Reply affidavit").

In opposition to the motions, plaintiff Alloy Briquetting Corporation submits the affidavit of Richard G. Collins, Esq., the affidavit of John J. DelMonte, Esq. and the Exhibits annexed thereto ("DelMonte affidavit"), the affidavit of Donald W. Vickrey and a memorandum of law dated December 3, 1990.[1]

I have also considered oral argument heard on December 17, 1990.

---

1. The affidavits and exhibits submitted by the parties in support of and in opposition to the motions reach only those portions of the motions which seek to dismiss plaintiff's Sixth and Eighth Claims for Relief. Therefore, pursuant to Fed.R.Civ.P. 12(c), I shall treat both defendants' motions to dismiss the Sixth Claim for Relief and Niagara Vest's motion to dismiss the Eighth Claim for Relief as motions for summary judgment pursuant to Fed.R.Civ.P. 56.

*Conclusion:* For the reasons discussed below, Union Carbide's motion for an order dismissing plaintiff's First through Fifth and Seventh Claims for Relief is GRANTED in part and DENIED in part, and as to the Sixth Claim for Relief, summary judgment is GRANTED, as limited and as more fully set forth herein; and Niagara Vest's motion for an order dismissing plaintiff's complaint in its entirety as to the First through Fifth and Seventh Claims for Relief is GRANTED in part and DENIED in part, as to the Sixth Claim for Relief, summary judgment is GRANTED as limited herein, and as to the Eighth Claim for Relief, summary judgment is DENIED.

## FACTS

Plaintiff commenced this action on August 1, 1990, seeking to recover, under various federal and state law theories, the costs plaintiff allegedly has incurred or will incur to clean up the alleged chemical contamination of certain property located in Niagara Falls, New York (the "Site"). Jurisdiction is predicated on 28 U.S.C. § 1331, § 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(b), and this Court's pendent jurisdiction.

Plaintiff's complaint alleges that it currently leases the Site from Niagara Vest, the current owner of the Site. Plaintiff's alleged status as lessee arises pursuant to two instruments: (1) an Agreement of Sale between plaintiff and Niagara Vest, dated July 1, 1988 (the "Agreement"), copies of which are attached to the DelMonte affidavit as Exhibit A, the McNamara affidavit as Exhibit A and the McNamara Reply affidavit as Exhibit B, and (2) a Lease between plaintiff and Niagara Vest, undated, (the "Lease"), copies of which are attached to the DelMonte affidavit as Exhibit B, the McNamara affidavit as Exhibit B and the McNamara Reply affidavit as Exhibit C. The Site is comprised of the combined tract of land which is the subject of the Agreement and the Lease.

Pursuant to the Agreement, Niagara Vest agreed to sell and plaintiff agreed to purchase "Building 24" and "Building 1 Extension," along with certain vacant land on a tract of land which was formerly the Union Carbide Republic Plant. However, the transaction contemplated in the Agreement could not close until Niagara Vest obtained appropriate subdivision approval. Until Niagara Vest could do so, the Agreement was to be converted to, and act as [2], a Lease Agreement pursuant to paragraph 6 thereof, under which plaintiff was permitted to occupy the subject premises as a tenant and was obliged to pay rent on a monthly basis, until such time as Niagara Vest obtained the subdivision approval and the closing was completed, up to a period of ten years. Apparently, Niagara Vest never obtained the subdivision approval, and the Agreement has been operating as a Lease Agreement, pursuant to paragraph 6 of the Agreement.

Pursuant to the Lease instrument, plaintiff leased from Niagara Vest for a period of one year "Building 23 & 1B" of the former Union Carbide Republic Plant.

Defendants dispute plaintiff's status as lessee and argue in support of their motions that plaintiff was evicted from the Site in May 1990 for failure to pay rent and taxes in violation of both the Agreement and the Lease. The circumstances and import of this alleged eviction are more fully discussed within.

Plaintiff's complaint further alleges that Union Carbide owned the Site prior to Niagara Vest, and for over 40 years had occupied the Site and operated a manufacturing facility on it. Plaintiff alleges that during the course of its operations, Union Carbide handled, used, stored and disposed of hazardous substances on the Site and adjacent property, and that following Niag-

**2.** The handwritten words "and act as" and "and a closing is completed" appear in paragraph 6 of the Agreement (and are initialed in the margin by "C.K.V." and "R.G.") on the copy of the Agreement which is attached to the DelMonte affidavit, but not on those copies attached to the McNamara affidavits. Because plaintiff is the non-moving party, I shall assume that the copy attached to the DelMonte affidavit is a true copy of the Agreement that was executed by plaintiff and Niagara Vest.

ara Vest's acquisition of the Site, Niagara Vest caused or permitted the deposit and storage of hazardous substances on property contiguous to the Site. Due to resulting releases, plaintiff allegedly incurred response costs consistent with the national contingency plan.

Plaintiff alleges eight Claims for Relief, seven against both defendants and one against Niagara Vest alone. Three of the claims common to both defendants arise under federal law. Those claims, (the First, Second and Sixth Claims respectively), seek (1) recovery from defendants, pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a), of all past, present and future response costs; (2) contribution from defendants, pursuant to § 113(f) of CERCLA, 42 U.S.C. § 9613(f), for all necessary response costs incurred by plaintiff; and (3) a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), setting forth "the rights and obligations of the parties with the [sic] regard to the hazardous substance contamination," (Complaint, ¶ 47), and the liabilities of defendants with regard to response costs incurred and to be incurred by plaintiff.

The four remaining counts common to both defendants allege state law claims for: (4) negligence (Third Claim); (5) strict liability (Fourth Claim); (6) common law restitution (Fifth Claim); and (7) "equitable indemnity" (Seventh Claim).

Plaintiff's Eighth Claim, asserted against Niagara Vest alone, alleges fraud in violation of state law.

Neither defendant has answered the complaint, but rather, both have moved for dismissal pursuant to Fed.R.Civ.P. 12(b).

## DISCUSSION

### I. *Federal Claims*

#### a. *First Claim*

Plaintiff alleges that both defendants are liable under CERCLA because they owned or operated the Site at the time hazardous substances were released, and "[a]s a direct and proximate result of the releases," plaintiff "has incurred and will continue to incur costs for testing, investigation, and

remediation of the releases into the soil, subsoil, surface water, and ground water ..." (Complaint, ¶¶ 23 & 25).

Defendants allege that this fails to state a CERCLA claim because plaintiff "fails completely to allege ... the costs it incurred, or the actions it took in response to the allegedly hazardous conditions at the Site." Defendants also argue that plaintiff should be required to plead the dates on which it incurred the alleged costs. (Union Carbide's Memo at 26–27).

■ Plaintiff must allege as an element of its prima facie case under § 107 of CERCLA that it incurred response costs. However, plaintiff "need not particularize the costs" that it incurred. *State of New York v. General Electric Co.,* 592 F.Supp. 291, 298 (N.D.N.Y.1984). In *General Electric,* 592 F.Supp. at 298, an allegation that plaintiff "has incurred and will continue to incur expenses and costs ..." sufficiently alleged recoverable response costs. *See also Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1156 (9th Cir.1989) (an allegation in the complaint that plaintiff had "been forced to incur response costs and in fact spent substantial amounts toward the clean-up, removal and remedial action" at a particular site sufficiently alleged response costs). *But see McGregor v. Industrial Excess Landfill, Inc.,* 856 F.2d 39 (6th Cir.1988) (plaintiff's complaint was insufficient because it did not allege either the costs incurred, or the action taken in response to the hazardous condition).

■ A pleading should only be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). I find that plaintiff has alleged that it incurred response costs with sufficient specificity to survive defendants' motion to dismiss. However, it is to be noted that in light of my holding, *infra,* regarding plaintiff's Sixth Claim for Relief for a declaratory judgment, I find that in order to survive defendants' motion to dismiss, plaintiff

must amend its complaint to allege the dates on which it incurred response costs. Therefore, defendants, motion to dismiss plaintiff's First Claim for Relief is denied but plaintiff is directed to amend its First Claim for Relief to allege the dates on which it incurred response costs.

### b. *Second Claim*

■ Plaintiff seeks contribution from defendants pursuant to § 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), which provides, in part:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.

Defendants argue that this claim is not ripe for adjudication because plaintiff has not yet been held liable for response costs or entered into a settlement regarding response costs under CERCLA.

In *Rockwell International Corp. v. IU International Corp.*, 702 F.Supp. 1384 (N.D.Ill.1988), the plaintiff's contribution claim under § 113 of CERCLA survived a motion to dismiss under circumstances similar to those in the instant case, and in the face of similar arguments. There, plaintiff ("Rockwell") sought, in separate Counts, declaratory relief as to the liability of the parties under § 107 of CERCLA and contribution under § 113 of CERCLA. Defendants there challenged the maintenance of an action brought under § 113, arguing that § 113(f)(1) "precludes any claim sounding in contribution except when brought by a party defending against or found liable in a § 9606 or § 9607(a) action." 702 F.Supp. at 1389. The district court rejected this argument, holding that "nothing in either the concept of contribution or CERCLA precludes a plaintiff from seeking a declaratory judgment, under 28 U.S.C. § 2201, that defendants who are jointly and sever-

ally liable should pay contribution for certain portions of that liability, only in the event the plaintiff is later found liable." *Id.* at 1389. The court interpreted the "during or following any civil action" language of § 113(f) simply as a limitation as to the point in time at which the actual payment of damages can occur. *Id.* The court continued:

> If Rockwell prevails in its claim for declaratory relief in Count I, it will establish that one or more defendants are jointly and severally liable for any response costs that Rockwell incurs at the facility in the future. The request for declaratory judgment in Count II provides an avenue for determining how such liability should be apportioned among those responsible parties.

702 F.Supp. at 1389–1390.[3]

Likewise, plaintiff in the instant case seeks contribution pursuant to § 113 of CERCLA in its Second Claim for Relief and a declaratory judgment setting forth the "rights and obligations of the parties with ... regard to the hazardous waste contamination" (Complaint, ¶ 47) in its Sixth Claim for Relief.[4] If plaintiff prevails on its Sixth Claim, it will establish the rights and obligations of the parties under CERCLA. Thereafter, plaintiff's Second Claim for contribution, which must be considered in conjunction with its Sixth Claim for declaratory relief, will determine how such liabilities are to be apportioned. Therefore, plaintiff's Second Claim for Relief is not premature.

The reasoning in *United States v. Seymour Recycling Corp.*, 686 F.Supp. 696 (S.D.Ind.1988), does not compel a contrary result. There, the district court held that a party's *motion for summary judgment* seeking declaratory relief on a contribution claim was not ripe because the party had not yet "resolved its [CERCLA] liability with the United States or a State. [42

---

**3.** The court recognized "that it may be prohibitively speculative to apportion liability in the absence of an actual finding of Rockwell's liability. That possibility does not preclude declaratory relief but merely places a very difficult burden upon Rockwell." 702 F.Supp. at 1390.

**4.** Subject to the restrictions on this claim which I shall articulate below, plaintiff's Sixth Claim for Relief remains viable.

U.S.C.] § 9613(f)(3)(B)." 686 F.Supp. at 700. Thus, while the *Seymour* court was being asked to dispose of the contribution claim on the merits, the *Rockwell* court was being asked only to rule on the viability of the claim in the face of a motion to dismiss. I find the instant situation to be identical in all material respects to the situation faced in the *Rockwell* case, and I find the reasoning therein to be persuasive.[5]

Therefore, defendants' motion to dismiss plaintiff's Second Claim for Relief is denied.

### c. *Sixth Claim*

Plaintiff's Sixth Claim seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a) setting forth the liability of defendants under CERCLA for response costs that plaintiff has incurred or will incur. Defendants move to dismiss this claim, insofar as it seeks a declaratory judgment regarding future costs [6], on two grounds. First, they argue that plaintiff lacks standing to assert a claim for future costs under CERCLA because it does not own the Site, and any legal or equitable rights plaintiff may have had in the Site based on its leasehold were extinguished by a Judgment of the Supreme Court of New York, County of Niagara, awarding possession of the Site to Niagara Vest due to plaintiff's failure to pay rent and taxes under the Agreement and the Lease, and a Warrant of eviction issued by the same court on May 8, 1990. (Reidy affidavit, ¶¶ 3 & 4). Plaintiff still occupies the Site by virtue of an order issued by the Niagara County Supreme Court on May 15, 1990 pursuant to CPLR 5519(a)(6), staying enforcement or execution of the warrant pending appeal and requiring plaintiff to post an undertaking in the amount of $50,-000.00. (Reidy affidavit, ¶ 5). Second, defendants argue that plaintiff's claim for declaratory relief based on potential future liability does not present a justiciable case

or controversy and is not ripe for adjudication. For reasons which will become immediately clear, I will discuss ripeness before standing.

#### i. *Ripeness*

■ Defendants' ripeness argument is more easily addressed. Specifically, defendants argue that plaintiff's allegation that it might be sued by the government for response costs at some time in the future lacks a factual basis and is "too speculative and remote to constitute a distinct or palpable injury which is ripe for adjudication." (Union Carbide's Memo at 19). Defendants claim that plaintiff's fear of government action must be "real and immediate" in order to sustain plaintiff's Sixth Claim.

However, New York federal courts have rejected the notion that a government order, *International Clinical Laboratories, Inc. v. Stevens,* 710 F.Supp. 466, 472 (E.D. N.Y.1989), or prior government approval, *City of New York v. Exxon Corp.,* 633 F.Supp. 609, 617 (S.D.N.Y.1986), is a prerequisite to recovery in a private CERCLA suit. In both of those cases, as in this case, the plaintiff sought a declaratory judgment as to liability for future response costs under § 107 of CERCLA. *See also Cadillac Fairview/California v. Dow Chemical Co.,* 840 F.2d 691, 696 (9th Cir. 1988) ("The absence of a government enforcement action under CERCLA does not render the controversy between the party seeking declaratory relief and the party who owned the site at the time of the hazardous waste disposal remote and hypothetical."). I must, therefore, reject defendants' ripeness argument.

#### ii. *Standing*

■ Defendants' standing argument presents a more difficult legal question. Fed.R.Civ.P. 56(c) directs the Court to render summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

**5.** Union Carbide attempts to distinguish *Rockwell* by noting that plaintiff there had been ordered by a state agency to incur response costs. However, there is no indication that this fact was at all significant in the *Rockwell* court's discussion of the contribution issue.

**6.** Defendants do not at this time challenge plaintiff's standing to assert a CERCLA claim for response costs allegedly incurred before plaintiff's leasehold in the Site was terminated. (Reidy affidavit, ¶ 6; Union Carbide's Memo at 17, n. 3).

as a matter of law." The burden is upon the moving party to demonstrate the absence of a material factual dispute. Fed.R. Civ.P. 56(e). If that burden is met, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Plaintiff maintains that because it has obtained a stay pending appeal and has not been dispossessed, it is in lawful possession of the Site and retains an interest in it sufficient to confer CERCLA standing. Defendants argue that plaintiff's presence is of no consequence because the issuance of the warrant of eviction annulled the landlord-tenant relationship and extinguished plaintiff's interest in the Site. New York Real Property Actions and Proceedings Law ("RPAPL") § 749(3)[7]; *Iltit Associates v. Sterner*, 63 A.D.2d 600, 601, 405 N.Y.S.2d 68, 69 (1st Dep't 1978). Neither party contends that any factual issue exists with respect to plaintiff's status. Indeed, defendants agreed at oral argument that plaintiff presently is in lawful possession of the property and has a present possessory interest. The issue, therefore, focuses on the legal characteristics of such possessory interest and is appropriately addressed in a motion for summary judgment.

Defendants correctly argue that because the warrant of eviction has been issued, plaintiff has no *legal* interest in the Site. Although there is a dearth of legal authority, courts have recognized that until the warrant is executed and the tenant is actually dispossessed, the tenant has an *equitable* interest based upon possession. *In re Onio's Italian Restaurant Corp.*, 42 B.R. 319, 320 (Bankr.S.D.N.Y.1984). This equitable interest distinguishes the instant case from *Pennsylvania Urban Development Corp. v. Golen*, 708 F.Supp. 669 (E.D.Pa.1989), which defendants cite for the proposition that a party with *no* protectable interest in property lacks standing to bring a CERCLA cost recovery action.

In that case, plaintiff had incurred costs of environmental evaluation one year before it had actually purchased the property. The court found that plaintiff failed to establish that it had an equitable interest in the property and could not recover the costs of the evaluation because "it had no property interest whatsoever in the property that was the subject of the investigation." 708 F.Supp. at 671. Here, in contrast, plaintiff has an uncontested possessory interest. At issue is whether this equitable interest in the Site is sufficient to bring plaintiff within the definition of "any other person" who may incur "necessary costs of response" under § 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B). I find that it is not.

Targeting the precise characteristics of plaintiff's equitable interest is an elusive task. *See In re Richards Pontiac*, 6 B.R. 773, 775 (Bankr.E.D.N.Y.1980) ("The exact nature of this property right ... is unclear."). This "residual interest" exists because as long as the tenant remains in possession, the Court retains jurisdiction pursuant to RPAPL § 749(3) to vacate the warrant of eviction, thus reviving the landlord-tenant relationship. *New York City Housing Authority v. Torres*, 61 A.D.2d 681, 403 N.Y.S.2d 527, 529 (1st Dep't 1978); *Lindsay Park Houses v. B & L Greer*, 128 Misc.2d 775, 490 N.Y.S.2d 953, 955 (N.Y. Civ.Ct.1985).

In the bankruptcy context, it has been held that "a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay [11 U.S.C. § 362]." *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir.1987). However, in *In re Richards Pontiac, Inc.*, 6 B.R. at 778, a landlord was granted relief from the automatic stay and permitted to execute a previously issued state court eviction warrant because the potential revival of the landlord-tenant relationship

---

7. RPAPL § 749(3) provides in part:
   The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.

was "fraught with uncertainty" and did not constitute adequate protection for the landlord's interest in the lease. *See also In re GSVC Restaurant Corp.*, 3 B.R. 491 (Bankr.S.D.N.Y.), *aff'd*, 10 B.R. 300 (S.D.N.Y.1980). In *In re W.A.S. Food Service Corp.*, 49 B.R. 969, 972 (Bankr.S.D.N.Y. 1985) the bankruptcy court held that the mere potentiality of reviving the landlord-tenant relationship through vacatur of the warrant of eviction did not vest the debtor with a sufficient interest in the leased property to allow assumption and assignment of the lease.

The characteristics of the equitable interest are the same when, as in the instant case, an evicted tenant retains possession by virtue of a stay of execution of the warrant of eviction pending appeal pursuant to CPLR 5519(a)(6). There, the interest is based on the expectation that the landlord-tenant relationship will be revived in the event that the appeals court vacates the warrant of eviction. In *In re B.K.B. Enterprises, Inc.*, 97 B.R. 170, 174 (Bankr. S.D.N.Y.1989), the equitable interest was held inadequate to allow assumption of the lease in accordance with 11 U.S.C. § 365(a) because "the debtor's prospects for a restoration of the landlord-tenant relationship are too insufficient to allow it to assume the lease." In that case, however, the debtor's motion to assume the lease was denied without prejudice to renewing the motion in the event that the appeals court vacated the warrant. 97 B.R. at 174.

Therefore, I find that plaintiff's equitable interest in the Site based upon RPAPL § 749(3) or CPLR 5519(a)(6) constitutes no more than a mere expectancy that the landlord-tenant relationship may be revived, and is insufficient to confer standing to bring a CERCLA cost recovery action. *Cf. Artesian Water Co. v. Government of New Castle County*, 851 F.2d 643, 650 (3d Cir.1988).

■  Plaintiff's argument that it has an "absolute right to continue in possession" (Plaintiff's memo, at 15) of the Site under the redemption provisions of RPAPL § 761 is susceptible to the same analysis.[8] In *In re GSVC Restaurant Corp.*, 10 B.R. 300, 302 (S.D.N.Y.1980), the district court termed such redemption rights under RPAPL § 761 as "no more than a chose in action" and rejected the argument that those rights could defeat the landlord's motion to modify the automatic stay to enable it to execute a warrant of eviction. *See also In re Richards Pontiac*, 6 B.R. at 776. Therefore, without deciding the question of whether plaintiff in the instant case possesses redemption rights under its agreements with Niagara Vest, I find that even if plaintiff does have redemption rights under RPAPL § 761, such rights are too uncertain to confer CERCLA standing.

Accordingly, defendants' motion for summary judgment dismissing plaintiff's Sixth Claim for Relief insofar as it requests a declaratory judgment with regard to future response costs is granted. Note, however, that such claim is dismissed without prejudice to renewal of the Claim by plaintiff should the warrant of eviction be vacated upon appeal.

## II.  *State Law Claims*

### a.  *Third and Fourth Claims*

■  Plaintiff's Third Claim for Relief alleges that both defendants negligently released hazardous substances on the Site, and as a result of such negligence, plaintiff was obliged "to incur the expenses and lost business attributable to either the shutdown and/or relocation of its business from the Site." (Complaint, ¶ 35). The Fourth Claim for Relief alleges that defendants are strictly liable for damages caused by the release of toxic substances into the environment, and that plaintiff "suffered damages, including the relocation and/or discontinuance of its business and losses attributable thereto." (Complaint, ¶¶ 39–40). The complaint's *ad damnum* clause demands "compensatory damages, includ-

---

**8.**  RPAPL § 761 provides that if a lessee holds over after a default in the payment of rent, and the unexpired term of the lease is five years or more, the lessee may pay to the lessor the amount of rent in arrears, and thereupon shall be entitled to possession of the premises according to the terms of the lease.

ing the costs of relocating its business or, in the event of a shutdown, all losses attributable thereto, in an amount according to the proof."

Union Carbide argues that plaintiff cannot maintain its negligence and strict liability claims because plaintiff has alleged only economic injuries and New York law does not permit recovery for such injuries under negligence or strict liability theories. I agree and thus, defendants' motion to dismiss plaintiff's Third and Fourth Claims for Relief is granted.[9]

Union Carbide correctly argues that plaintiff may not maintain a tort action that seeks to recover purely economic damages. In *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir.1984), the Second Circuit recognized that "New York Law holds that a negligence action seeking recovery for economic loss will not lie." *See also Price Brothers Co. v. Olin Construction Co.*, 528 F.Supp. 716, 721 (W.D.N.Y.1981); *Camania Corp., N.V. v. Hambrecht Terrell International*, 705 F.Supp. 936, 938 (S.D.N.Y.1989) ("If the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort."). Likewise, allegations of economic harm alone will not support a strict liability claim. *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d at 63; *Schiavone Construction Co. v. Elgood Mayo Corp.*, 56 N.Y.2d 667, 451 N.Y.S.2d 720, 436 N.E.2d 1322 (1982), *reversing* 81 A.D.2d 221, 439 N.Y.S.2d 933 (1st Dep't 1981) (adopting the dissenting opinion of Silverman, J.). Because the complaint alleges only damages flowing from business interruption or possible relocation, economic damages for which plaintiff could recover in a contract action, plaintiff cannot maintain the negligence and strict liability claims.

Plaintiff argues that Union Carbide's definition of "economic damages" is too narrow, and urges this Court to find that because the complaint clearly alleges that defendants caused physical damage to the Site, and the economic losses allegedly suffered by plaintiff followed from such damage, the negligence claim is sufficient. (Plaintiff's memo, at 22–23). However, plaintiff does not own the Site, and could not maintain a negligence suit to recover for the *physical* damage to the property. The only injury it alleges to have suffered as a result of the physical damage is that it was deprived of the use of the Site and such deprivation caused business losses. This is a type of economic injury compensable in a contract action. The cases plaintiff relies upon (Plaintiff's memo at 22–23 [those cases cited at 36 NYJur §§ 112 & 115]) are inapposite, inasmuch as the plaintiffs in those cases either asserted causes of action other than in negligence or strict liability or owned the property which was damaged.

Accordingly, defendants' motion to dismiss plaintiff's Third and Fourth Claims for Relief is granted.

b. *Fifth and Seventh Claims*

■ Defendants argue that plaintiff's restitution claim (Fifth Claim) and its indemnity claim (Seventh Claim) are deficient to the extent that they seek recovery of expenses plaintiff will incur in the future. Defendant argues that both remedies are restricted to recovery of expenses that plaintiff has already incurred and do not extend to future costs. *State of New York v. Schenectady Chemicals*, 103 A.D.2d 33, 39, 479 N.Y.S.2d 1010, 1014 (3d Dep't 1984); *City of New York v. Keene Corp.*, 132 Misc.2d 745, 505 N.Y.S.2d 782, 787 (S.Ct. N.Y. County 1986), *aff'd*, 129 A.D.2d 1019, 513 N.Y.S.2d 1004 (1st Dep't 1987).

Plaintiff did not respond to this argument in its papers and acknowledged at oral argument that New York law limits its

---

9. Union Carbide also argues that because it no longer owns the Site and because it is a stranger to the agreement between plaintiff and Niagara Vest, Union Carbide owed no legal duty to plaintiff, and therefore plaintiff cannot recover from Union Carbide in negligence. Because I agree with Union Carbide's argument that plaintiff may not recover in negligence or strict liability for the economic damages it has alleged, I need not and do not reach the issue of the nature of the duty, if any, Union Carbide owed to plaintiff.

restitution and indemnity claims to recovery of past expenses.

Accordingly, defendants' motion to dismiss plaintiff's Fifth and Seventh Claims for Relief to the extent that they seek recovery for future expenses is granted.[10]

### c. *Eighth Claim*

In the Eighth Claim for Relief, plaintiff charges fraud, alleging that Niagara Vest made various representations to plaintiff regarding the environmental character and quality of the Site. Such representations consisted of paragraph 12 of the Agreement,[11] and "numerous verbal assurances given by Niagara Vest's two chief local employees, Mike Balent and Ralph Wallace, both of whom are former employees of Union Carbide and played key roles in the plant closures for Union Carbide." (Complaint, ¶ 56). Plaintiff further alleges that it relied upon these representations, (Complaint, ¶¶ 57 & 59), which were false at the time they were made. (Complaint, ¶ 58).

Niagara Vest argues that plaintiff may not maintain the fraud claim because paragraph 8 of the Agreement and paragraph Fifth of the Lease state that plaintiff had inspected the property and accepted the property "as is", without reliance on any representations, warranties or guaranties of Niagara Vest. (McNamara affidavit, ¶¶ 4–5). Therefore, plaintiff cannot not now claim that it relied on Niagara Vest's representations. Furthermore, Niagara Vest argues that paragraph 12 of the Agreement was not an affirmative covenant, but rather, was a representation "to the best of seller's knowledge." (McNamara affidavit, ¶ 6). Finally, Niagara Vest argues that the fraud allegation is deficient because it fails to allege that Niagara Vest made any statements to plaintiff with the intent to deceive or mislead or that any of Niagara Vest's representatives knew of the alleged contamination when they made the alleged representations. (McNamara affidavit, ¶ 6).

Plaintiff counters that the cited contract language does not constitute a waiver by plaintiff of its contractual right to rely on Niagara Vest's representations. Further, it argues that its fraud claim complies with the pleading requirements of Fed.R.Civ.P. 9(b), in that Niagara Vest's fraudulent intent may be fairly inferred from the facts that plaintiff has alleged.

#### i. *"As is" language of the Agreement and Lease*

Niagara Vest argues that paragraph 8 of the Agreement and paragraph Fifth of the Lease prevent plaintiff from maintaining a fraud action. Under New York law, specific language in a contract disclaiming reliance upon any statement or representation not embodied in the contract prevents a party from maintaining a fraud claim based on reliance upon a contrary oral misrepresentation. *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320–21, 184 N.Y.S.2d 599, 602, 157 N.E.2d 597, 600 (1959). However, the Court in *Danann* expressly distinguished "factual situations wherein the facts represented were matters peculiarly within the defendant's knowledge." 5 N.Y.2d at 322, 184 N.Y.S.2d at 603, 157 N.E.2d at 600. In *Tahini Investments, Ltd. v. Bobrowsky*, 99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984), a contract for the sale of real property contained language that plaintiff had examined and investigated the subject property, and was not relying upon any warranties or any representations as to the physical nature or condition of the property. After the transaction had closed, plaintiff discovered industrial waste on the property. The court reversed the order of the lower court which had granted summary judgment dis-

---

**10.** Defendants do not dispute at this time the viability of plaintiff's claims for indemnity and restitution of costs already incurred. However, defendants do dispute the validity of those costs and their obligation to pay them.

**11.** Paragraph 12 of the Agreement reads:
12. To the best of Seller's [Niagara Vest's] knowledge, information and belief, there are no hazardous wastes on the real property to be purchased pursuant to this agreement, and no hazardous wastes have ever been disposed of on the property by Seller. Seller has conducted all of its activities on the property to be purchased in full compliance with all environmental laws and regulations.

missing plaintiff's fraud claim, finding that a material issue of fact existed as to whether the alleged misrepresentations of fact regarding the waste were peculiarly within the seller's knowledge. 470 N.Y.S.2d at 433.

■ Likewise, here the fact that the Site was allegedly contaminated may have been peculiarly within Niagara Vest's knowledge. This is a question of fact, and as the moving party, Niagara Vest bears the burden of showing that there is no dispute with regard to this fact. I find that Niagara Vest has not done so.

■ Furthermore, the cited language in the Agreement and the Lease is not sufficiently specific to bar plaintiff's fraud claim. Paragraph 8 of the Agreement and paragraph Fifth of the Lease merely disclaim reliance upon representations generally, and do not disclaim specifically reliance upon representations as to the environmental quality of the Site.

In *Danann*, 184 N.Y.S.2d at 602, 157 N.E.2d at 600, plaintiff's fraud claim was barred because plaintiff had specifically disclaimed reliance on any representations as to the *very matter* as to which it claimed it was defrauded. *See also Centronics Financial Corp. v. El Conquistador Hotel Corp.*, 573 F.2d 779, 782 (2d Cir.1978) ("Only if the written contract included a specific disclaimer of the very representation later alleged to be the foundation for rescission [based on fraud] would such proof be barred. [citing *Danann* ].”); *Price Brothers Co. v. Olin Construction Co.*, 528 F.Supp. at 720–21 (fraud claim allowed because the disclaimer did not specifically address the representations plaintiff alleged were fraudulent). Therefore, defendants' argument herein must fail.

### ii. *Nature of Niagara Vest's representations*

With regard to Niagara Vest's argument that paragraph 12 of the Agreement was merely a representation "to the best of seller's knowledge,” the question of whether Niagara Vest actually had knowledge of the contamination at the time the alleged misrepresentation was made is a question of fact to be explored through discovery. Summary judgment at this time would be premature.

### iii. *Rule 9(b) Compliance*

Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.” Thus, while scienter need not be pled with great specificity, the complaint must allege facts which give rise to a strong inference that defendants possessed the requisite fraudulent intent, such as where "the allegations lie peculiarly within the opposing parties knowledge ...”. *Ouaknine v. MacFarlane*, 897 F.2d 75, 81 (2d Cir.1990). *See also Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990).

Plaintiff has alleged that it was assured by two named Niagara Vest employees that the Site was not contaminated. These employees were also former Union Carbide employees, and allegedly were familiar with the Site. (Complaint, ¶ 56). Facts regarding the environmental characteristics of the Site may have been "peculiarly within the ... knowledge” of such employees. Therefore, I conclude that plaintiff has alleged facts which give rise to a strong inference of fraudulent intent.

It remains true, however, that even though plaintiff alleges facts sufficient to raise the requisite inference of intent, plaintiff has failed to plead, even generally, as required by Fed.R.Civ.P. 9(b), that Niagara Vest actually possessed such intent. Nevertheless, because the facts alleged have given Niagara Vest fair notice of plaintiff's claim and "adequately identif[y] circumstances indicating conscious behavior by the defendants,” *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989), plaintiff's technical failure to allege intent is not fatal to the fraud claim. I will require, however, that plaintiff amend the Eighth Claim for Relief in its complaint to allege, even if only in conclusory terms, that Niagara Vest made the alleged misrepresentations with the intent to deceive plaintiffs.

Consequently, Niagara Vest's motion for summary judgment dismissing plaintiff's Eighth Claim for Relief is denied.

CONCLUSION

For the reasons articulated above, it is the conclusion of this Court as follows:

1. Defendants' motion to dismiss plaintiff's First and Second Claims for Relief is DENIED.

2. Defendants' motion to dismiss plaintiff's Third and Fourth Claims for Relief is GRANTED.

3. Defendants' motion to dismiss plaintiff's Fifth and Seventh Claims for Relief, to the extent that they seek recovery for future expenses, is GRANTED.

4. Defendants' motion for summary judgment dismissing plaintiff's Sixth Claim for Relief, to the extent that it seeks a declaratory judgment as to liability for future response costs, is GRANTED, such dismissal of that portion of the Sixth Claim being without prejudice to its renewal in the event that the warrant of eviction as to plaintiff is vacated on appeal.

5. Finally, Niagara Vest's motion for summary judgment dismissing plaintiff's Eighth Claim for Relief is DENIED.

ORDER

IT HEREBY IS ORDERED, that defendant Union Carbide's motion, as joined in by Niagara Vest, to dismiss plaintiff's First through Seventh Claims for Relief is GRANTED in part and DENIED in part as to First through Fifth and Seventh Claims, as more fully set forth in the above decision and conclusion; and as to the Sixth Claim for Relief, summary judgment is GRANTED, as limited and as more fully set forth in the above decision and conclusion.

IT FURTHER IS ORDERED, that Niagara Vest's motion dismissing plaintiff's complaint in its entirety—as to the First through Seventh Claims for Relief, it is GRANTED in part and DENIED in part, for the same reasons as in the joined motion with Union Carbide and as more fully set forth in the above decision and conclu-

sion; and as to the Eighth Claim for Relief, summary judgment is DENIED, as more fully set forth in the above decision and conclusion.

IT FURTHER IS ORDERED, that plaintiff Alloy Briquetting Corporation shall file and serve an amended complaint as to its First Claim for Relief so as to allege the dates on which it incurred response costs, and as to its Eighth Claim for Relief so as to allege fraudulent intent on the part of defendant Niagara Vest, such amendments to take place within twenty days of receipt of this Decision and Order.

SO ORDERED.